FILED

NOV 18 2019

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

Attachment A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MR. CASEY LUCZAK
(PLAINTIFF)

*Your full name*

v.

MS. ANGELA P. DUNBAR
  (Regional Director/BOP)
MR. JOE COAKLEY
  (Former Warden/USP Hazelton)
MR. A. MORI
  (Acting Camp Administrator)
MS. R. THOMPSON
  (Former Camp Administrator/USP Haz)
MS. L. SMITH
  (Acting Camp Administrator)
MR. B. FRIEND
  (Health Services Administrator/BOP)
DR. GREGORY MIMS
  (Medical Doctor/BOP)
MR. A BAUGHMAN
  (Camp Counselor)
MS. B. DUGAN
  (Camp Case Manager)
MS. LEANNE M. VONDEHAAR

BUREAU OF PRISONS

U.S PROBATION OFFICE
  (Covington, Kentucky)

*Enter above the full name of defendant(s) in this action*

**FEDERAL CIVIL RIGHTS COMPLAINT**
**(*BIVENS* ACTION)**

Civil Action No.: 1:19CV210
*(To be assigned by the Clerk of Court)*

Kleeh, Aloi,
Williams

I. **JURISDICTION**

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).** The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

II. **PARTIES**

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

A. Name of Plaintiff: Mr. Casey Luczak  Inmate No.: #42940-048
   Address: P. O. Box 17124, Ft. Mitchell, Kentucky 45017

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

B. Name of Defendant: See below. There are 12 named defendants.
   Position: See below.
   Place of Employment: See below.
   Address: See below.

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☑ Yes    ☐ No

If your answer is "YES," briefly explain: _____

*All 12 named defendants deprived the plaintiff of his rights under color of law, as detailed herein.*

Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.
For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within the their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties.

1. Defendant Ms. Angela P. Dunbar is an adult individual whose position with the Bureau of Prisons is, Regional Director. Mid-Atlantic Region, 302 Sentinel Drive (#200), Annapolis Junction, Maryland 20701.



2. Defendant Joe Coakley is an adult individual whose position with the Bureau of Prisons (BOP)) was Warden, USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525.

3. Defendant Mr. A. Mori is an adult individual whose position with the Bureau of Prisons varies but for purposes of this lawsuit he served, for a period of time, as Acting Camp Administrator at USP Hazelton.

4. Defendant Ms. R. Thompson is an adult individual who served as Camp Administrator, for a period of time, at USP Hazelton. It appears she has since been transferred to: FCI Pekin, 2600 S. Second Street, Pekin, Illinois.

5. Defendant Ms. L. Smith is an adult individual who is employed by the BOP, having served as Acting Camp Administrator and other related functions. As of last notice she was still employed at USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525.

6. Defendant B. Friend is an adult individual employed by the BOP as a Health Services Administrator, USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525.

7. Defendant Dr. Gregory Mims serves as a licensed medical practitioner for the BOP, with supervisory responsibility. He practices medicine at USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525

8. Defendant Andrew Baughman serves as a Camp Counselor at USP Hazelton. He is an adult individual in location at USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525.

9. Defendant Ms. Brandy Dugan is an adult individual who is employed by the BOP as a Camp Case Manager, USP Hazelton, 1640 Sky View Drive, Bruceton Mills, West Virginia 26525.

10. Defendant Leanne M. Vondehaar is a probation officer in Kentucky located at U.S. Probation Office, U.S. Courthouse, 35 W. Fifth Street, Room 116, Covington, Kentucky 41011. She is an adult individual who encroached her authoritative boundaries.

11. Defendant Bureau of Prisons must be recognized inwardly as an inept agency of the Department of Justice. Not only did it condone the improper course of action employed by the individual co-defendants so named inside, it must be held liable under the "failure to train" theory.

12. Defendant U.S. Probation Office, Covington, Kentucky, located per Section #11 above, is being named as a defendant in this lawsuit because of its simple opacity in condoning the actions of this incompetent probation officer, Leanne M. Vondehaar, whose actions extended beyond her authoritative responsibility.

## III. PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution:

*Satellite Prison Camp Hazelton, Bruceton Mills, West Virginia (Released on 4/9/2019)*

A. Is this where the events concerning your complaint took place?
☑ Yes   ☐ No

If you answered "NO," where did the events occur?

_____



B.  Is there a prisoner grievance procedure in the institution where the events occurred?   ☑ Yes   ☐ No

C.  Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
☑ Yes   ☐ No

D.  If your answer is "NO," explain why not: _____
_____
_____
_____

E.  If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1 _____ *See below.* _____

LEVEL 2 _____

LEVEL 3 _____

**EXHAUSTION OF REMEDIES DOCTRINE**

While the "exhaustion of remedies" doctrine oftentimes materializes in these civil action complaints, it cannot serve as a procedural trap in the instant action. In fact, it will solidify the plaintiff's accusation that the Bureau of Prisons was constituent to the plaintiff's false imprisonment and abuse of process, in conjunction with his malicious prosecution averment.

It was through the BOP Administrative Remedy Process that the Bureau became aware of the plaintiff's fatally defective indictment and the illegal amending of that indictment in his PSR while under the jurisdiction of the BOP. Its failure to file a motion for reduction in sentence to his sentencing court, being fully aware of these extraordinary and compelling reasons pursuant to USSG 1B1.13, Application Note (a)(A)(iv) demonstrated its improper and tortious use of a legitimately named prison process.

Supreme Court decisions make it clear that prison officials are expected to know the constitutional rights of prisoners. This places the burden on prison officials to keep themselves apprised of the current state of the law. Ignorance cannot be a defense for these officials or the BOP when confronted with a lawsuit for monetary damages.

As contestable as the Prison Litigation Reform Act (PLRA) is, it requires prisoners to exhaust "such administrative remedies as are available" before a lawsuit can prevail. According to the Supreme Court, proper exhaustion serves the PLRA's goals (Woodford v Ngo, 548 U.S. 81 – 2006).

While the PLRA requirement applies to all prisoners' suits about prison life, it has no bearing on cases dealing with false imprisonment and abuse of process claims. Nonetheless, the plaintiff exhausted his remedy, as evidenced in Attachment 4 herewith, which corroborates his arguments in this suit for financial retribution.

Further, for sake of any possible counterargument by the defendants, the plaintiff is a "former" prisoner, therefore, the PLRA does not apply. (Section 14.5.7, 2011 Matthew Bender Company, Chpt. 15, Selected Federal Statutes Affecting Prisoners).

In the spirit of the preceding, Attachment 4 herewith must serve to occlude favorable adjudication for the plaintiff against all defendants named heretofore under color of state law.

## IV. PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?   ☐ Yes   ☑ No

## V. STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)***

CLAIM 1:   ABBREVIATED FRAMEWORK OF THIS FIRST PLEADING

This is a pro se complaint and, as such, it is held to less stringent standards than those drafted by attorneys (Cruz v Beto, 405 U.S. 319 – 1972). Further, the allegations in a pro se complaint must be taken as true and construed in favor of the plaintiff (Urbina v Thoms, 270 F.3d 292, 295 – 6th Cir-2001).

In full appreciation of this malicious prosecution and subsequent completion of an illegal 10+ years federal prison award in punishment, central to a fatally defective indictment, let it be noted with certitude, should this court opt not to favor the plaintiff with the monetary damages expressed inwardly, a jury trial must govern.



The plaintiff alleges the defendants named within, violated his Eighth and Fourteenth Amendments of the U.S. Constitution, central to gross negligence and willful misconduct, "...nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws..." (Fourteenth Amendment). "...Nor cruel and unusual punishments inflicted..." (Eighth Amendment).

In addition, however, to alleviate the mandatory factor for this court's genuine interpretation of the constitutional encroachments carried into execution by the named defendants in this complaint, the plaintiff quantifies a portion of the infractions effectuated by each co-defendant heretofore. These actions in isolation mandate retribution, supported by content in Attachments 1 through 4.

----------

**** Defendant Angela P. Dunbar has a personal history of negligence and deliberate indifference as evidenced in hundreds of BP-10s filed by the plaintiff in behalf of inmates, as part of the BOPs "unworkable" Administrative Remedy Process. In Attachment 6 herein, Dunbar opines with assurance, "...the warden has adequately addressed your concerns...however, based on the review by the RMB Central Sector Medical Team, a placement was denied..." What the deceptive Dunbar conveniently avoids is the fact that the medical review was comprised of altered medical records (See Attachment 1, Exbt B). It was her responsibility to investigate the plaintiff's allegation his medical records were altered, similar to his indictment being amended (illegally changing his crime) in his PSR while under the jurisdiction of the BOP. In her robotic pattern of denying all BP-10s with the same response, "the warden has adequately addressed your concerns", she seals her own fate of negligence and deliberate indifference. How can any workable program never favor the inmate? Should trial by jury become essential in this grievance, the plaintiff is prepared to show a jury hundreds of BP-10s in boiler-plate denial. As for the plaintiff's altered medical records, Attachment 1 wholly enlightens this court.

**** Defendant Joe Coakley. No longer is he warden at USP Hazelton, as he was forced into early retirement following the suspicious murder of notorious gangster Whitey Bulger soon after his transfer to Hazelton. Coakley was persistent in his violations of the plaintiff's rights. First, he condoned interference from prison staff in the law library, where the plaintiff served as law clerk, literally having correctional officers destroy the legal work the plaintiff did for inmates, so they couldn't access the courts, which is their constitutional right. Coakley also did nothing when learning the fatally defective indictment of the plaintiff was changed by unknown parties as a form of obstruction of justice. Coakley also approved of home confinement for the plaintiff, then accepted the alteration of his medical records in denial by Dr. Gregory Mims, as instructed directly by Mr. A. Mori. (See Attachment 1, Exbt A).

**** Defendant A. Mori. It was this acting camp administrator who instructed Dr. Mims to alter the plaintiff's medical records to cover-up his sense of duty to release the plaintiff to home confinement. In a response dated March 12, 2018 (See Attachment 1, Exbt A), Mr. Mori goes into great detail indicating the plaintiff is "eligible", after thorough investigation, for "home confinement" as part of standard pre-release...He concludes with the statement, "...if a RRC placement cannot be effectuated in this case, it is requested inmate Luczak be considered for home confinement..." However, when RRC placement was indeed denied with altered medical records, and the plaintiff "called his marker" with Mr. Mori for release to home confinement, his response was oppositional. On May 28, 2018 (See Attachment 1, Exbt A), after ordering Dr. Mims to alter the plaintiff's medical records from a Care1 to Care3 status, no pre-release of any kind ever followed.

**** Defendant L. Smith. This confused disciple of the BOP errantly held a meeting with the plaintiff, never imagining the disclosures that would be forthcoming. She was made aware of his indictment being amended changing his crime; his altered medical records by Dr. Mims, covered-up by Mr. B. Friend and used by Mr. Mori and Warden Coakley to detain him further in prison, including the 70 additional days he was compelled to serve after his legal release date; and during his entire 10+ years of detainment in federal prison, he never had a visitor. (See Tort Claim # 2, Attachment 2). In evidence appearing as Attachment 1, Exbt D, are two affidavits from inmates who inadvertently overheard Smith's assessment following the meeting with the plaintiff. Smith informed the plaintiff these were serious allegations and she would investigate them and be back in touch with him with answers. As expected, she lied and never again contacted the plaintiff. And, when he tried to make contact with her she avoided him, knowing he was soon to be released. The affidavits speak for themselves and typify how impervious the BOP really is.

**** Defendant R. Thompson is no longer at USP Hazelton where she served as Camp Administrator for a short period of time. Her ignorance, neglect and deliberate indifference are decisively visible in her denial of the plaintiff's request for a motion from the BOP to his sentencing court for reduction in sentence deductible by USSG 1B1.13, Application Note (a)(A)(iv). The law is very clear. Any inmate seeking a sentence reduction based entirely on the "facts of his case" can approach the BOP to write a motion to his sentencing court for a sentence reduction, if that inmate can show the BOP that he is serving an illegal sentence. This is precisely what the plaintiff has experienced, with established matter in evidence herewith. If there is any suspicion of such an occurrence, the BOP is accountable to authenticate his arguments objectively, and proceed accordingly with the motion if it is determined to be accurate. Nothing more. These become the "extraordinary and compelling" reasons justifying the request, as a matter of law. The motion would be filed under 18 U.S.C. 3582 (c)(1)(A)(i). This is not to say the BOP could not deny the request with sound reasoning, but the "ignorance" of Thompson not even knowing policy, decisively shows she violated the plaintiff's constitutional rights to due process of law. Her simple illogical statement in denial was, "You have not qualified for any type of reduction in sentence..." (See Attachment 4). This superficial denial is dated November 15, 2016, two days after the event filing date of November 13, 2016. It would be impossible for Thompson or the BOP to have substantiated the records in toto in those two days, more neglect and indifference on behalf of the incapable BOP.

In further illustrative support, the court is introduced to Salvatore F. DiMasi, Ex-Speaker of the House in Massachusetts, who in 2011 was sentenced to eight(8) years in prison for extortion and related crimes (United States v Salvatore F. DiMasi, Cr. No. 09-10166-MLW). After serving five(5) years, the BOP in conjunction with the cooperative government, filed a motion pursuant to 18 U.S.C. 3582(c)(1)(A)(i), and DiMasi was released for "extraordinary and compelling" reasons. This course of action is relevant to the instant action because it contradicts defendant R. Thompson's supercilious authoritative opinion.

While defendant R. Thompson is certainly entitled to her own opinion, she holds no privilege to her own facts. Her reaction, while presented with special aptitude, does far more to support the plaintiff's allegations than denigrate them. The Supreme Court has held that a prison official can be found reckless or deliberately indifferent if the official knows of, and disregards an excessive risk to an inmate, and "liberty interest" certainly qualifies as such. (Farmer, 511 U.S. at 837).

**** Defendant B. Friend. This puppet of a figure in the health department for USP Hazelton committed two blatant acts of deception. First, he supported case manager B. Dugan, when she improperly without reason or authority, ordered the plaintiff to be "guard escorted" to medical services outside the prison compound when furloughed. This was five years after the plaintiff was incarcerated and was absolutely done maliciously with prejudice, two traits Dugan is well known for with all camp inmates. She also covered-up the fact the plaintiff advised her that his fatally defective indictment was amended against the law in his PSR. She ignored his request to file this knowledge of the incident with the proper authorities. She further lied to him that he could receive no early release to a halfway house or home confinement due to his medical history being a Care3, when in fact it was a Care1 at the time. See Attachment 1, Exbt B. Her course of action was in violation of 18 USC 3624(c)(2).

**** Defendant Dr. Gregory Mims. This licensed medical practitioner literally altered the medical records of the plaintiff as evidenced in Attachment 1, Exbt B herein. Defendants Friend, Smith, Dugan and Baughman were fully aware of this violation, and did nothing about it. It was Friend who attempted to cover-up for Dr. Mims by telling the plaintiff it was Dunbar at Region who altered the records, not Mims. It matters not who, only that it was done maliciously with purpose.

**** Defendant A. Baughman. It was this counselor who extorted money from the plaintiff illegally through the BOPs infamous Inmate Financial Responsibility Program (IFRP). During his entire imprisonment, the plaintiff made forced illegal payments toward his restitution of $200, $100 and eventually $50 per month. In fact, as matter of law, he was court ordered to pay only one-third of his prison earnings toward his restitution, nothing more. (See Attachment 7). Even though the BOP argues the plaintiff agreed to the payments, which he did under severe threats of commissary sanctions, the transgression persists by the fact the BOP defied a court order and constructed its own payment plan with prejudice against the plaintiff. See Attachment 1, page 6. Further, Baughman ignored policy and never checked periodically, the receipt of deposits into the plaintiff's commissary account which is mandated by regulations, so adjustments to the IFRP payment could be implemented accordingly. In fact, Baughman never did this for any inmates, so the entire collection process was a complete sham. These overpayments must now be refunded if the entire award in damages is not properly satisfied.

**** Defendant Leanne M. Vondehaar. This delusional probation officer from Covington, Kentucky took it upon herself to deny the 80 year old plaintiff from living with his common-law wife of 17 years upon his release, because in her warped mind, she concluded the plaintiff's "wife" should have been indicted. Then, Vondehaar, as bright as she isn't, had the audacity when the plaintiff requested explanation in writing, to write him a letter (See Attachment 6), stipulating "policy does not require or obligate the probation office from any explanation." How "depraved" can this judiciary get with all this unnecessary "legal mumbo-jumbo". Since when does this government have the authority or discretionary power to punish people it opines should be indicted. If they should have been indicted, then indict. Otherwise, focus on "real criminals" and stop with the foolishness. Thus, to continue punishing the plaintiff with added "surprises" a "clueless" probation officer is instructed in continuance of his malicious prosecution, to proceed as stated herein. Further, the lawcourts in this country have the audacia to preach fair treatment and integrity. Because of this course of action by Vondehaar with the U.S. Probation Office, Covington, Kentucky, tolerating and refraining from punishment to this over-zealous probation officer, the relationship between the petitioner and his common-law wife of 17 years, has been terminated by her. This has brought about additional undue suffering to the plaintiff at an age when it can no longer be enduring, all because Vondehaar overstepped her authoritative boundary. (See Attachment 1, Exbt B, page 3)

**** Defendant Bureau of Prisons. The history of this inept agency is all too visible with no one willing to "clean house", as eventually it must be done. The BOP is best defined as a "runaway train", and 10 years was ample time for this plaintiff to learn far more about this "agency of necessity only" than the BOP suspected. As for the case at bar, the BOP must be held liable, not only because it condoned all these stated constitutional violations of the individual defendants heretofore, it must be liable under the "failure to train"" theory.

**** Defendant Covington Probation Office. This agency is at fault because it condoned the actions of Probation Officer Vondehaar, who clearly needs to be relieved of her duties pursuant to the legal incapacity known best in the halls of justice as "stupidity", if nothing else.

----------

Clearly defined, this violation against the plaintiff has been "continuing" during his entire serving of his 10+ years illegal declaration of penalty, occasioned by ongoing unlawful acts from purported ministers of justice. Significantly, it is not "continual" ill-effects only from the original violation (Cowell v Palmer Twp, 263 F.3d 286,293 -3rd Cir-2001). Each named co-defendant herein has committed wrongful acts within the limitations period, as in appearance above. (Shomo v City of New York, 579 F.3d 176,183-84-3rd Cir-2009)

On April 5, 2019 the plaintiff filed three(3) tort claims against the Bureau of Prisons pursuant to the Federal Tort Claims Act (Section 15.2, 2011 Matthew Bender & Company, Inc., Constitutional Rights of Prisoners) (BOP Program Statement 1320.06, Section 543.30).

The above-mentioned tort claims appear fastened to Attachments 1, 2, and 3 from this time on to avert duplication in the matter of favorable justification under "Bivens", which allows the plaintiff to sue government officials as individuals for violating his constitutional rights under the color of state law. (Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 US 388, 91 S. Ct. 1999 – 1971).

The facts in argument are clearly formulated in this complaint that create a plausible scenario under which the named tortfeasors acted outside their scope of employment (Riley v Potter, CA No. 08-5167 – 2010).

Respectively, the tort claims in attachment are comprised of the following: (1) False Imprisonment and Abuse of Process - $10 million dollars; (2) Overserving Sentence by 70 days - $350,000; (3) Dental treatment mandated by BOP deliberate indifference - $52,000.

As matter of law, the BOP had six months to respond to these tort claims, with that final deadline date being October 5, 2019. No such response of any kind was ever forthcoming. Its "silence" compels this court to deduce the BOP holds no defense for any of the allegations in presentment in this complaint, and must therefore rule in favor of the plaintiff.

BOP Program Statement 1320.06, Section 543.30, Reference 8(a) – Processing the Claim, states in exactness, "...you will receive an acknowledgment letter indicating the filing date and a claim number..." No such letter was ever realized by the plaintiff.

In furtherance of Section 8c (1), the plaintiff is assured that an investigation will be conducted. Ordinarily, the regional office, Mid-Atlantic Region (Angela P. Dunbar), would refer the claim to the appropriate institution for investigation, in this case the current warden at USP Hazelton. Instead, she did the expected, which her history forebodes as nothing.

The warden was mandated by Section 8c (1) to prepare a report with his recommendation Then, by law, the plaintiff had the right to rebut that endorsement. No such report was ever defensible.

## VI. INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

The best middle ground for amplification of the truth to the plaintiff's ongoing allegation that his indictment has been fatally defective, is to refer this court to Attachment 5, Exbt A. Deductible by these statements of fact, supported by the record, if this court dares, let it show that this indictment is not defective. It would be a sacrilege to so suggest, if not an embarrassment to the powers of this judicial assembly.

Indictments cannot be amended in substance, as was done in the instant action with the changing of terms and language (United States v Cancelliere, 69 F.3d 1116, 1121 – 11th Cir – 1995). This logic follows from the fundamental distinction between the information and the indictment which must be returned by a grand jury. If the indictment could be so changed, it would no longer be the indictment returned by the grand jury. In "Russell v United States, 369 U.S. 749, 769 – 1962", the court pointed out that a consequence of amending an indictment is that the defendant "could then be convicted on the basis of facts not found by, and perhaps not even presented to the grand jury which indicted him.

Thus, the Fifth Amendment forbids amendment of an indictment whether actual or constructive (United States v Wacker, 72 FR.3d 1453, 1474 -10th Cir – 1995). This revelation must affirm that the plaintiff, not only served a 10+ years illegal sentence, but his prosecutor, Christina M. Brown, lied to a grand jury and brought fraud upon a lawcourt with pure deception, which constitutes a malicious prosecution.

## VII. RELIEF

State **BRIEFLY and EXACTLY** what you want the Court to do for you. *Make no legal arguments. Cite no cases or statutes.*

MONETARY DAMAGES

No court of law can deprive this plaintiff from filing this civil action complaint under the "Bivens Doctrine" with entitlement to awards in monetary damages for each of his three (3) federal tort claims admissible by the Federal Tort Claims Act (FTCA).

The plaintiff seeks in irrefutable argument $10 million dollars for false imprisonment and abuse of process (Attachment #1); $350,000 for being held in captivity 70 days longer than his true release date

(Attachment #2); and $52,000 for major dental work now required due to the BOP's non-existent dental services, absent any level of review, in evidence with one dentist providing service to approximately 4,500 prisoners on a mountain in West Virginia. Surely, money is allocated for proper medical and dental services to the BOP, but where does the money go?

With added emphasis on Tort Claim #2, the only way a prisoner can lose his earned good time credits is as a result of a disciplinary infraction, thereby prolonging his confinement. Losing those credits any other way violates due process of law, as occurring in the instant action, a constitutional transgression. The BOP has not only provided a statutory right to good time, but also specifies that it is to only be forfeited for serious misbehavior. For this reasoning alone, this court is compelled to accept Tort Claim #2 in presentment, favorable to the plaintiff in toto.

The purpose of this financial retribution is to redress deprivations of the plaintiff's constitutional rights, having been held in captivity illegally to serve a 10+ years sentence central to a defective indictment the BOP refused to address when it was brought to its attention in 2016.

Further violations of the plaintiff's constitutional rights included the following: (1) serving 13 months of his sentence in a LOW security facility when in fact he was to serve that time in a camp, designated by the court ( See Attachment 1, page 5 and Exbt B, page 3; (2) being deprived of any visitors during his entire sentence; (3) having money extorted from him under the guise of the BOP's infamous IFRP program; (4) having his medical records altered by a licensed medical practitioner, Dr. Gregory Mims; (5) having the very indictment he maintained was defective for 10+ years in continuing appeal, amended illegally by government officials just prior to his release; (6) constant harassment as he performed over 40,000 actual hours of free legal assistance to all inmates free of any charges whatsoever; (7) and being assigned "guard escort" five years into his sentence as punishment when he was furloughed for medical care "off the prison compound" which resulted in having the 80 year old plaintiff sleep in the SHU the night before scheduled medical treatment off the prison compound. How sick is this?

Facts cannot be ignored. The BOP was an integral component in this malicious and vindictive prosecution, with its role deductible by the above-mentioned facts. This action of deliberate indifference by the BOP produced mental suffering, major medical and dental negligence, producing justification for punitive damages not to exceed $10 million dollars, but certainly not less than that.

. The isolated purpose of the stated damage awards are intended to compensate the plaintiff for injuries that were caused by the deprivation of his constitutional rights. Because such damages are totally divorced from any compensatory purpose, they are not being justified as presumed damages, but serve as a substitute for ordinary compensatory damages.

In truth, these federal tort claim amounts are justified punitive damages for deprivations by the defendants so named with transgression of constitutional rights associated in principle to Section 73 above.

These punitive damages must be awarded for reckless, callous indifference to the federal protected rights of this plaintiff, to decisively derail the BOP from continuing this illegal practice against federal prisoners. Should trial by jury become necessary in the instant action. witnesses will be brought forward to substantiate the aforesaid.

While local governments are not natural persons and might be immune from punitive damages in civil action complaints, those named herewith do not qualify for any such exemption.

In closing, the plaintiff, in addition to the stated award in damages, beseeches this court to grant such other relief, as it may appear the plaintiff holds entitlement. This grievance is a FTCA claim whereby the plaintiff can recover monetary awards from those named herein, including the BOP for injury caused by neglect and wrongful acts.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate. Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _Ft. Mitchell, KY_ on _November 15, 2019_
(Location)                                      (Date)

_____
Your Signature